# EXHIBIT A

at issue in the Action—*e.g.*, New Century, GSAMP Trust 2006-S2 Securities, and Defendants.  The only category that Western Asset would not agree to produce is its document production and testimony in another lawsuit (*Harborview*), involving different parties, different securities and different mortgage originators and underwriters.  To the extent any documents in that other production may arguably be relevant to the Action, those documents would be produced in *this* Action as a result of Western Asset and Defendants' agreement with respect to other categories of documents sought by the Subpoena—*e.g.*, Western Asset's reports concerning underwriting standards.  (Exhibit 3, no. 2.)  What's more, Western Asset agreed to search its *Harborview* production and deposition transcript specifically for references to Defendants, the securities at issue in this Action (GSAMP Trust 2006-S2), and the mortgage originator and underwriter involved in the offering of those securities, and to produce any resulting hits.  (Exhibit 8.)

Western Asset's proposal is generous in light of Defendants' own positions regarding discovery served upon them.  In March 2012, at the very time Defendants were pressing Western Asset to produce a wide array of documents relating to mortgage pass-through securities, mortgage originators and underwriters other than— and unrelated to —GSAMP Trust 2006-S2, Defendants served a general objection to document discovery demands, including for the production of transcripts, on grounds including that:

> the production of documents or information regarding securities other than the GSAMP Trust 2006-S2 certificates at issue in the Action . . . are neither relevant to the claims or defenses of any party to, nor reasonably calculated to lead to the discovery of admissible evidence in, the Action.

*See* Defendants' March 5, 2012 Responses and Objections at 4-5 (attached as Exhibit 5).  Defendants relented, although only slightly, with respect to the production of transcripts by agreeing to provide "portions" of certain transcripts "that reference either (i) GSAMP Trust 2006-S2 or (ii) New Century." (*See*

CALDWELL LESLIE & PROCTOR

-6-

NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

1   Defendants' letter to Plaintiffs, dated April 27, 2012 (Exhibit 6) at 2.)  Defendants

2   did not disclose these positions to Western Asset at any time during the three

3   months' discussion about the Subpoena.  Rather, in May 2012, Western Asset was

4   forced to obtain Defendants' objections from Plaintiffs, in order to assess whether

5   Defendants' positions vis-à-vis Western Asset were asserted in good faith.

6        As such, it is abundantly clear that Defendants' argument that their Subpoena

7   is reasonably calculated to lead to the discovery of admissible evidence is specious.

8   Contrary to Defendants' assertion that they are seeking documents that may relate to

9   their defenses (*e.g.*, class members' purported knowledge regarding specific

10  misrepresentations in the GSAMP Trust 2006-S2 offering materials), Defendants are

11  on a fishing expedition.  That, however, is expressly prohibited by the Ninth Circuit.

12  *Rivera v. NIBCO, Inc.*, 3645 F.3d 1057, 1072 (9th Cir. 2004) (holding "[d]istrict

13  courts need not condone the use of discovery to engage in 'fishing expedition[s].'");

14  *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993) (holding that

15  relevancy "should not be misapplied so as to allow fishing expeditions in

16  discovery").

17       Finally, Defendants' reliance on the existence of a protective order in the

18  Action to justify their right to discover Western Asset's entire *Harborview*

19  production is disingenuous.  Western Asset—just like Goldman Sachs or any other

20  company for that matter—has a right to protect its sensitive company business

21  information from unreasonable discovery, irrespective of the existence of a

22  protective order.   This is especially true when no good cause has been shown that

23  the information sought is needed in a live dispute.

24       For these reasons, Western Asset respectfully submits that Defendants'

25  motion should be denied.

26

27

28

CALDWELL
LESLIE &
PROCTOR

NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL
THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

1  directly probative of the issues relevant to the Action.  Western Asset has refused

2  Defendants' offered compromise.[2]

3            (b)    **Western Asset's Position**

4       **A.    The *Harborview* production**

5       *New Jersey Carpenters Vacation Fund et al. v. The Royal Bank of Scotland*

6  *Group, PLC*,  No. 08 CV 5093 (HB) (S.D.N.Y) ("*Harborview*") is a securities class

7  action involving alleged omissions and misstatements in offering materials of

8  mortgage-backed securities known as the Harborview Trust certificates

9  ("Harborview certificates").  Initially filed separately, *Harborview* was eventually

10 consolidated with another class action involving other securities (the "RALI

11 Certificates"), thus becoming the case Defendants refer to as "*RALI/Harborview*."

12 A named representative plaintiff in *Harborview* was a client of Western Asset and

13 Western Asset had purchased Harborview certificates on that client's behalf.  As a

14 result, Western Asset was served with a subpoena and deposition notice, and

15 produced documents and provided testimony.

16       Western Asset's production in *Harborview* does not live up to Defendants'

17 billing.  It does not contain records reflecting meetings with New Century,

18 discussion or commentary on New Century's mortgage underwriting practices, or

19 analysis of the GSAMP Trust Series S2 securities or, for that matter, other pass-

20 through mortgage certificates underwritten by Goldman Sachs.  The

21 *RALI/Harborview* court did not suggest otherwise.  272 F.R.D. at 168-169.  Western

22 Asset has previously agreed to produce to Defendants the reports referring to

23

24 _____

25 [2] Western Asset's citation to Defendants' Responses and Objections to Plaintiff's
Document Requests in this Action for the proposition that Western Asset's
production should be limited to documents and testimony concerning the

26 Certificates at issue (*see infra.* at 16 and Ex. 5) is a red herring.  As Western Asset
knows, notwithstanding their objections, Defendants produced many documents in

27 the Action concerning mortgage originators generally and that production was not
limited to documents concerning the Certificates themselves.

28

CALDWELL
LESLIE &
PROCTOR

-12-
NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL
THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

1  deteriorating underwriting standards and lax underwriting standards, because of

2  their relevance to this Action, not because they were part of the *Harborview*

3  production.

4       The vast majority (approximately 83 percent) of the documents in the

5  *Harborview* production consists of confidential financial and contractual material,

6  such as portfolio summaries, directly relating to Western Asset's client (a named

7  plaintiff in *Harborview*), produced pursuant to a protective order entered in

8  *Harborview*.

9       Western Asset's deposition in *Harborview* also contains substantial

10 confidential testimony about Western Asset's client and the transcript was

11 designated confidential in its entirety pursuant to the protective order.  The aspects

12 of the deposition Defendants claim to be "highly relevant" to this action (*i.e.*

13 Western Asset's knowledge that "loans could be originated with exceptions to

14 underwriting guidelines," and that such exceptions increased the "risk of

15 delinquencies and heightened losses") was public information at the time, and the

16 reason references to underwriting exceptions frequently appeared in prospectuses.

17 **B.    Non-parties are subject to greater protection against marginally**

18 **relevant discovery.**

19       The Ninth Circuit has held that necessary restrictions must be imposed on

20 non-party discovery to "protect third parties from harassment, inconvenience, or

21 disclosure of confidential documents."[3]   *Dart Industries Co. v. Westwood Chemical*

22

23 [3] This rule has been followed by other federal courts.  *See Polycast Technology*
24 *Corp. v. Uniroyal, Inc.*, No. 87-CIV-3297-CSH, 1990 WL 138968 at *3 (S.D.N.Y. Sept. 20, 1990) ("non-party witnesses may be subject to somewhat greater
25 protection against costly but marginally relevant discovery than are the parties"); *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D.N.Y. 1983) ("Restrictions on
26 discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or
27 disclosure of confidential information."); *Slater Steel, Inc. v. Vac-Air Alloys Corp.*, 107 F.R.D. 246, 248 (W.D.N.Y.1985) (quoting from *Dart Industries*).

28

CALDWELL
LESLIE &
PROCTOR

NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL
THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

1  *Co.*, 649 F.2d 646, 649 (9th Cir.1980) ("While discovery is a valuable right and

2  should not be unnecessarily restricted ..., the 'necessary' restriction may be broader

3  when a nonparty is the target of discovery.'"). The standards for nonparty discovery

4  require a stronger showing of relevance than for simple party discovery. *Laxalt v.*

5  *McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986). Courts consider the nonparty

6  status of the subpoenaed entity as a significant factor when balancing the relevance

7  of the discovery sought against the undue burden to produce. *Jones v. McMahon*,

8  No. 5:98-CV-0374, 2007 WL 2027910 at *16 (N.D.N.Y. July 11, 2007); *American*

9  *Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987) (affirming district

10  court's restriction of discovery where nonparty status "weigh[ed] against

11  disclosure"); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.

12  1988) (nonparty status a significant factor in determining whether discovery is

13  unduly burdensome), aff'd, 870 F.2d 642 (Fed. Cir. 1989); *Richards of Rockford,*

14  *Inc. v. Pacific Gas & Electric Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (deponent's

15  nonparty status considered in deciding motion to compel testimony and production

16  of documents); *S.E.C. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D. 268, 269 (D.

17  Conn. 1996) ("The court may consider a movant's non-party status when weighing

18  the burdens imposed in connection with the subpoena at issue."); *Jack Frost Lab.,*

19  *Inc. v. Physicians & Nurses Mfg. Corp.*, No. 92-CV-9264, 1994 WL 9690 at *2

20  (S.D.N.Y. Jan. 13, 1994) ("The most obvious burden is borne by the non-party

21  witness, and we are instructed to be particularly sensitive to any prejudice to non-

22  litigants drawn against their will into the legal disputes of others.").

23     To the extent documents in Western Asset's *Harborview* production relate to

24  Defendants, GSAMP Trust 2006-S2 or New Century, Western Asset has agreed to

25  produce. Accordingly, the only dispute remaining relates to documents for which

26  Defendants have made no showing whatsoever that relevancy outweighs the

27  interests of Western Asset and its client in confidentiality and in minimizing burden,

28  inconvenience and expense.

CALDWELL
LESLIE &
PROCTOR

-14-

1  purported knowledge of an investment manager about specific false representations

2  in the offering materials of one such offering is not relevant to or calculated to lead

3  to the discovery of admissible evidence regarding another such offering. The

4  fundamental dissimilarities between the Harborview and GSAMP Series 2006 S2

5  offerings effectively illustrate the point. There is *no* overlap between the

6  underwriters or the mortgage originators involved in the two offerings.[4] Further,

7  some prospective investors were granted access to the Harborview mortgage loan

8  files—in stark contrast to GSAMP Series 2006 S2.[5] Additionally the *initial public*

9  offering in GSAMP Series 2006 S2 was in April 2006, while the *initial public*

10 *offering* of Harborview did not conclude until October 2007. *New Jersey*

11 *Carpenters Vacation Fund v. Royal Bank of Scotland, PLC,* 720 F. Supp. 2d 254,

12 257 (S.D.N.Y 2010). Defendants' inspecific references *supra* to "loan originators"

13 and "underwriting standards," as if there were complete commonality between the

14 two offerings, is thoroughly misplaced.[6]

15      Defendants have thoroughly mischaracterized the district court's opinion in

16 *RALI/Harborview* in arguing that the opinion supports the purportedly probative

17 nature of the *Harborview* production and testimony. The discussion, confined to a

18

19

20 [4] The Harborview mortgage originators were Countrywide, American Home,
21 IndyMac, BankUnited and Downey—not New Century. *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC,* 720 F.Supp.2d 254, 259-260
22 (S.D.N.Y. 2010 ). The Harborview underwriters were the Royal Bank of Scotland Group, pLC and one or more Greenwich Capital entities—not Goldman Sachs. *Id.*
23 at 257-258.

24 [5] *RALI/Harborview,* 272 F.R.D at 169; 12/16/2011 *Tr.* at 17:18-21(*MissPERS II* class certification hearing.) (Exhibit 4) (Defendants' counsel conceded in the class
25 certification hearing in the Action that, "We don't contest . . . that the investors did not, as Fannie and Freddie did, apparently in the [*Harborview*] case, they didn't go
26 and look at the loan files[.]").

27 [6] For essentially identical reasons, the *Harborview* production has nothing to do with Defendants' statute of limitations defense or Defendants' desire to de-certify
the class.

28

CALDWELL
LESLIE &
PROCTOR

-16-
NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL
THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

1   paragraph, does not attribute to Western Asset *any* knowledge other than the most
2   basic, *public* information. *RALI/Harborview* 272 F.R.D. at 169-170. The fact that
3   exceptions to loan underwriting guidelines can increase the risk of mortgage
4   delinquencies is basic, obvious to all, and set forth in Defendants' offering
5   documents for GSAMP Series 2006 S2. (Exhibit 7 at 3 ("LESS STRIGENT
6   UNDERWRITING STANDARDS AND THE RESULTANT POTENTIAL FOR
7   DELINQUENCIES ON THE MORTGAGE LOANS COULD LEAD TO LOSSES
8   ON YOUR CERTIFICATES").) The facts regarding deteriorating mortgage
9   underwriting standards, expanded mortgage guidelines, and lax underwriting
10  standards were equally basic and public. Western Asset has already agreed to
11  produce the full contents of the reports the court cited in support of its finding.
12  *RALI/Harborview* 272 F.R.D. at 170 (references to exhs. G and H).

13      In its certification decision in this Action, the Court distinguishes the
14  *RALI/Harborview* decision and notes that the evidence of individual investor
15  knowledge in *RALI/Harborview* did not relate to Western Asset but to the
16  involvement of *other* investors, specifically Freddie Mac and Fannie Mae, in
17  structuring the offerings and   in reviewing and selecting mortgage loans.
18  *MissPERS II* at *6 (referring to *RALI/Harborview* 272 F.R.D. at 169). Further, the
19  Second Circuit observed in its summary opinion affirming *RALI/Harborview*,
20  "Defendants' evidence of knowledge [ ] surely would not have sufficed to prove
21  each knowledge defense on the merits[.]" *See New Jersey Carpenters Health Fund*
22  *v. Residential Capital, LLC,* 2012 WL 1481519 at *3 (2d Cir. Apr. 30, 2012)
23  (Summary Order). Rather the court determined, based on limited evidence, that the
24  knowledge defenses would require extensive individual proceedings, a
25  determination that the Second Circuit found not to be "clearly erroneous." *Id.*
26      It is no surprise therefore that in certifying the class in this Action, the court
27  disregarded Defendants' attempts to rely upon the court's findings in its previous
28  opinion denying class certification in *RALI/Harborview*. *MissPERS II*, 2012 WL

336146 at *6-*7 ("Defendants have shown that certain investors may have had [...] a greater or lesser awareness of underwriting exceptions throughout the industry, and this, they opine, makes it more likely that an investor knew about the alleged misstatements in the Offering Documents. These amorphous generalizations hardly rise to the level of [] specific evidence that linked investor activity to the specific offerings at issue.")

**D.   A protective order does not eliminate Defendants' burden or provide adequate protection to Western Asset**

The existence of a protective order or Defendants' "offer" that Western Asset may designate its production as "Attorneys' Eyes Only" does not eliminate or reduce in any way Defendants' burden in the first instance of demonstrating that potential relevancy of the discovery they seek. Fed. R. Civ. Proc. 26(b)(1) ("Unless otherwise limited by court order . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."). Such an argument—if successful—would render that burden meaningless. Indeed, it is doubtful that Defendants themselves would have asserted this argument if they were in Western Asset's position. Defendants would hardly agree to produce their entire production and testimony in an unrelated litigation involving different securities, different parties, and different clients without requiring the party seeking that information to first demonstrate its relevance. Defendants—like Western Asset— must protect, *inter alia*, information of clients and proprietary analysis and investment models that have nothing to do with the litigation at hand.

Furthermore, the existence of a protective order is no guarantee that Western Asset's confidential trade secret and proprietary information would be safe from public disclosure. See *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 397 (E.D.N.Y. 2007) (involving a conspiracy by certain persons in a litigation to publicly disseminate information protected by a protective order). This concern is especially acute for Western Asset because it is a not a party in the Action, which is

CALDWELL
LESLIE &
PROCTOR

-18-

NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL
THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

1  pending across the country in New York.   Thus, it will be unable to monitor the

2  Action closely to make sure that the parties to the protective order are adhering to

3  their obligations under the order.  Moreover, once the protective order is breached—

4  intentionally or not—any secrecy or benefit of confidentiality Western Asset

5  enjoyed is lost forever and an injunction or damages award will not be able to make

6  Western Asset whole.  *Id.* at 397 ("To extend the reach of the injunction further

7  might involve the court in attempting to control a constantly expanding universe of

8  those who might have, or will have, access by reason of the original breach. That

9  such an amplified injunction could be enforced effectively is doubtful.").

10  **V.    DEFENDANTS' CONCLUSION**

11        For the foregoing reasons, Defendants' Motion to Compel Western Asset's

12  compliance with the Subpoena should be granted, and Western Asset should be

13  ordered to produce (i) the documents produced by Western Asset in the

14  *RALI/Harborview* litigation and (ii) the transcript of the deposition testimony

15  provided by Western Asset or its employees in that case.

16  **VI.    WESTERN ASSET'S CONCLUSION**

17        For the foregoing reasons, the court should deny Defendants' Motion to

18  Compel Western Asset's compliance with the Subpoena.

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL
THIRD-PARTY WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA