UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4302-SJO (AGRx) | Date | June 19, 2012 |
|---|---|---|---|
| Title | In Re Subpoena Duces Tecum on Western Asset Management Co. | | |

| Present: The Honorable | Alicia G. Rosenberg, United States Magistrate Judge | |
|---|---|---|
| Marine Pogosyan | CS 6/19/2012 | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Movant: | | Attorneys Present for Respondent: |
| Brett D. Jaffe | | Ralph F. Hirschmann |
| David K. Willingham | | Belinda Vega |

**Proceedings:**   MOTION TO COMPEL WESTERN ASSET MANAGEMENT CO. TO COMPLY WITH RULE 45 SUBPOENA

Case is called.  Counsel state their appearances.  Brett D. Jaffe, Esq. and David K. Willingham, Esq. appear on behalf of Movant The Goldman Sachs.  Ralph F. Hirschmann, Esq. and Belinda Vega, Esq. appear on behalf of Respondent Western Asset Management Co.

On May 17, 2012, the Goldman Sachs parties[1] filed a motion to compel third party Western Asset Management Co. ("Western Asset") to produce documents.  (Dkt. Nos. 1, 14.)  On June 5, 2012, the Goldman Sachs parties filed a supplemental memorandum.  (Dkt. No. 12.)  On June 5, 2012, Western Asset filed a supplemental memorandum.  (Dkt. Nos. 13, 15.)  The matter was referred to this magistrate judge.  (Dkt. No. 11.)  The matter came on for hearing on June 19, 2012.

The third party subpoena served on Western Asset issued from the Central District of California.  (Exh. C to Joint Stipulation (JS).)  "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).  The issuing court may, on motion, quash or modify the subpoena, or order production under specified conditions.  Fed. R. Civ. P. 45(c)(3)(B)-(C); *SEC v. CMKM Diamonds, Inc.*, 656 F.3d 829, 832 (9th Cir. 2011) (issuing court has authority to quash or modify subpoena); *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th Cir. 2003) (district court did not abuse discretion in quashing overbroad subpoena served upon third party).

---

[1] The Goldman Sachs Group, Inc., Goldman Sachs & Co., Goldman Sachs Mortgage Co., and GS Mortgage Securities Corp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4302-SJO (AGRx) | Date | June 19, 2012 |
|---|---|---|---|
| Title | In Re Subpoena Duces Tecum on Western Asset Management Co. | | |

### *Factual Background*

Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") represents a class of all persons or entities that purchased or acquired publicly offered certificates of GSAMP Trust 2006-S2 and were damaged thereby. *Public Employees Retirement System of Mississippi v. The Goldman Sachs Group*, Case No. 09-1110, 2012 U.S. Dist. LEXIS 13548, *4-*5 (S.D.N.Y. Feb. 2, 2012) (granting motion for class certification) The certificates were derived from a pool of securitized fixed rate, second-lien home mortgages. The mortgage loans underlying the certificates were originated by New Century Financial Corp. *Id.* *3. The Second Amended Complaint alleges that the offering documents for the certificates contained untrue statements and omitted material facts. *Id.*

MissPERS alleges "New Century failed to follow its own stated underwriting standards and used improper appraisals overstating the collateral value, and that Defendants failed to conduct adequate due diligence when acquiring the loans for securitization. Consequently, the statements in the Offering Documents concerning compliance with underwriting and appraisal standards were materially untrue when they were made, and as a result, Plaintiff and the Class purchased certificates that were far riskier than represented." *Id.* at *4.

### *Document Request No. 7*

The sole dispute concerns Request No. 7 for "[d]ocuments (including electronic documents) previously produced by Western Asset in the *RALI/Harborview* litigation and transcripts of any testimony given by a Western Asset witness in that case."[2] (JS at 8.)

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

"District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 634 (9th Cir.

---

[2] Request No. 7 is apparently the result of the meet and confer process on Request No. 14 in the original subpoena. (JS at 8 n.1 & Exh. C.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4302-SJO (AGRx) | Date | June 19, 2012 |
|---|---|---|---|
| Title | In Re Subpoena Duces Tecum on Western Asset Management Co. | | |

2005). A district court may limit the extent of discovery for the reasons stated in Fed. R. Civ. P. 26(b)(2)(C) and 26(c). The mere existence of a protective order does not obviate the need for the court to analyze relevance and other factors. *See Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622-23 (9th Cir. 1999).

The Goldman Sachs parties assert that Western Asset was one of the largest purchasers of the GSAMP Trust 2006-S2 certificates at issue in this case. (JS at 3.) The purchases apparently occurred in 2006-2007.

The *RALI/Harborview* litigation is summarized in *New Jersey Carpenters Health Fund v. The Royal Bank of Scotland*, 272 F.R.D. 160 (S.D.N.Y. 2011) (hereinafter "*RALI/Harborview*"). In summary, the Harborview securities were sold in a series of offerings in 2006 and 2007. *Id.* at 162. Western Asset purchased Harborview certificates on behalf of its client. In the subsequent litigation, Western Asset produced documents pursuant to a subpoena and was deposed. (JS at 12.)

At oral argument, Western Asset represented that, based on the results of its search of the *RALI/Harborview* documents, its client in that case did not buy the GSAMP Trust 2006-S2 certificates at issue in this case.[3] In addition, it is undisputed that this litigation involves different securities, underwriters and mortgage originators. Whereas the Harborview mortgage originators were Countrywide, American Home, IndyMac, BankUnited and Downey, the mortgage originator in this case is New Century. Whereas the Harborview underwriters were The Royal Bank of Scotland and one or more Greenwich Capital entities, the underwriter in this case is Goldman Sachs. (JS at 3, 16 & nn. 4-5.)

Western Asset proposed to produce the reports cited by the court in *Harborview* and documents relating to the Goldman Sachs parties, GSAMP Trust 2006-S2, or New Century. (JS at 13-14, 17.) Western Asset objected that the vast majority of documents consists of "confidential financial and contractual material, such as portfolio summaries, directly relating to Western Asset's client (a named plaintiff in *Haborview*, produced pursuant to a protective order entered in *Harborview*." (*Id.* at 13.) Western Asset also represents that its deposition in *Harborview* "contains substantial confidential

---

[3] Western Asset represents that its document production in *Haborview* "does not contain records reflecting meetings with New Century, discussion or commentary on New Century's mortgage underwriting practices, or analysis of the GSAMP Trust Series S2 securities or, for that matter, other pass-through mortgage certificates underwritten by Goldman Sachs." (JS at 12.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4302-SJO (AGRx) | Date | June 19, 2012 |
|---|---|---|---|
| Title | In Re Subpoena Duces Tecum on Western Asset Management Co. | | |

testimony about Western Asset's client."  (*Id.*)

The Goldman Sachs parties argue that Western Asset's proposal is insufficient and requests the entire *Harborview* production.  This request is overbroad.  In denying class certification in *RALI/Harborview*, the court concluded that individual issues predominated and denied class certification.  272 F.R.D. at 170.  The court analyzed evidence "imputing knowledge to Western Asset."  *Id.* at 168-70.  Western Asset's corporate representative "testified that it was regular practice for its analysts to meet with mortgage originators, including the largest originator of loans comprising the securities at issue in this litigation."  *Id.* at 169.  Western Asset's objective in these meetings was "'to understand what their underwriting guidelines were . . . and also get a sense for how their businesses were doing . . . understand what their procedures were in servicing loans and [try to learn] about any changes to the underwriting guidelines.'"  *Id.* (citation omitted).  In addition, Western Asset "'would have wanted to understand' whether originators made 'any exceptions to their underwriting guidelines.'"  *Id.* (citation omitted).  When Western Asset purchased the Harborview 2007-07 certificates, "it knew that loans could be originated with exceptions to underwriting guidelines, and it knew that such loans posed increased the risk of delinquencies and heightened losses."  *Id.*  The court observed Western Asset had issued reports "that make clear it had at least some awareness of the risk or type of conduct that is targeted in this lawsuit."  *Id.*  Specifically, the court quoted a document that stated: "'Western Asset has closely followed the subprime market since its inception and has been concerned about the deteriorating underwriting standards over the past few years.'"  *Id.* (citation omitted).  Western Asset was aware of trends among lenders, especially subprime lenders, to relax down payment and income requirements.  *Id.*

By contrast, in granting class certification in the *MissPERS* matter, the same judge distinguished his findings in the *Harborview* case.  *MissPERS*, at *18-*23.  "Defendants have shown that certain investors may have had reservations about New Century and a greater or lesser awareness of underwriting exceptions throughout the industry, and this, they opine, makes it more likely that an investor knew about the alleged misstatements in the Offering Documents.  These amorphous generalizations hardly rise to the level of *In re IPO* and *[Harborview]*, where there was specific evidence that linked investor activity to the specific offerings at issue."  *Id.* at *23.

Given that the client in *RALI/Harborview* apparently did not purchase the GSAMP Trust 2006-S2 certificates at issue here, and there are no common originators or underwriters, the scope of relevant documents in the *RALI/Harborview* production is limited.  This court will order Western Asset to produce the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-4302-SJO (AGRx) | Date | June 19, 2012 |
|---|---|---|---|
| Title | In Re Subpoena Duces Tecum on Western Asset Management Co. | | |

    (1) reports about originator underwriting and appraisal standards in the industry during the relevant period[4]

    (2) documents relating to Western Asset's meetings with originators, as described by its corporate representative, regarding their general underwriting and appraisal standards and exceptions to those standards during the relevant period. To be clear, Western Asset need not produce communications with originators or underwriters about specific, individual transactions.

    (3) the portions of its deposition transcripts regarding the two topics above, including those portions cited by the district court in the two opinions cited above.

    IT IS HEREBY ORDERED that the Goldman Sachs parties' motion to compel is GRANTED IN PART as follows:

1. On or before July 9, 2012, Western Asset shall produce the documents described in this order. Western Asset may designate the documents pursuant to a protective order.

2. In all other respects, the motion to compel is denied.

|  | 1 | 30 |
|---|---|---|
| Initials of Preparer | mp | |

---

[4] The subpoena indicated the time frame began November 1, 2004. However, the parties did not disclose whether the time frame had been modified in the meet and confer process.